NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CAPITAL ONE, NATIONAL ASSOCIATION, : : : Plaintiff, : : : vs. : : SAQUIB KHAN, : : Defendants. : : | Civil Action No. 12-7731(FSH) **OPINION** May 2, 2013 |

**HOCHBERG, District Judge**:

This matter comes before the Court upon Plaintiff's Motion for Summary Judgment.[1] The Court has considered the submissions of the parties pursuant to Fed. R. Civ. P. 78.

**BACKGROUND**[2]

On or about August 17, 2010, Richmond Wholesale Company, Inc. ("Richmond") opened a business checking account at Capital One, account number ending in 5209, and on or about August 17, 2010, Richmond opened another business checking account at Capital One, account number ending in 5373. By executing the signature cards, Richmond agreed to be bound by Capital One's Rules Governing Deposit Accounts in New York ("Rules"), which set forth Capital One's policies and procedures relating to amounts drawn on deposit accounts in excess of

---

[1] Also before the Court is Defendant's Motion for a Modification of the Preliminary Injunction and Temporary Restraints. However, because this Opinion grants Summary Judgment in favor of Plaintiff and the accompanying Order closes the case, this Motion is deemed moot.

[2] Unless otherwise noted, the facts set forth below are taken from the parties' Rule 56.1 Statements and are not in dispute.

the balance available in the account ("overdrafts") and provides:

> We may in our sole discretion, and without obligation, elect to pay checks and other items drawn on your deposit account or to permit automatic bill payments and withdrawals against your account for an amount in excess of your available balance (an "Overdraft"). . . .  You have no right to overdraw your account at any time, for any reason, and our decision to pay Overdraft items is solely within our discretion.  You understand and agree that if we elect to pay Overdraft items or to permit an Overdraft to exist in your account, you have no right to defer payment, and you must deposit additional funds into your account promptly in an amount sufficient to cover the Overdraft and to pay us Overdraft fees for each Overdraft item in accordance with our current Schedule of Fees and Charges. . . .  You acknowledge and agree that no oral or other statement made to you by any of our officers or employees, or any course of dealing under which we may, from time to time, or one or more times, elect to pay and honor Overdrafts on your account, may be construed by you, or by any third person, or by any court or arbitrator, to in any way modify, amend or contravene the foregoing provisions, or to in any way obligate us to pay and honor future Overdraft items or permit you to defer payment of existing and future Overdraft balances.

Capital One extended to Richmond a product known as Remote Deposit Capture, by which Richmond could deposit an item electronically transmitting an image of that item to Capital One in lieu of presenting the item to Capital One in person.  Capital One made deposited funds immediately available upon deposit with the expectation that Richmond actually had the funds, and that checks deposited with Capital One by Richmond would be honored by the payor bank.

As a result of certain wire transfers out of the overdrawn accounts, and of the deposit of certain checks into the overdrawn accounts which were returned for insufficient funds, the overdrawn accounts became substantially overdrawn.  As of December 19, 2012, the date of the filing of the Complaint in the instant matter, the account ending in 5209 is overdrawn in the amount of $5,032,310.71, and the account ending in 5373 is overdrawn in the amount of $2,403,076.24, for a total of $7,435,386.95.  Certain additional accounts are also overdrawn,

specifically, account ending in 4321 is overdrawn in the amount of $2.98, and account ending in 1817 is overdrawn in the amount of $10,763.72.  Accordingly, the total amount on all overdrawn accounts is $7,446,153.65.  Capital One has demanded that Richmond cover these overdrafts but it has failed to do so.

Capital One then commenced an action against Richmond in the Supreme Court of New York, County of New York, asserting causes of action based upon the overdrafts, including breach of contract, fraud and unjust enrichment.  Richmond executed and delivered to Capital One a Confession of Judgment, which was executed by Saquib Khan, as president of Richmond, before a notary.

In the Confession of Judgment, Khan, on behalf of Richmond, "confesses judgment and authorizes entry thereof against [Richmond] in the amount of $7,685,389.93, which represents the balance owed by [Richmond], as of December 12, 2012, to [Capital One]."  The Confession of Judgment further provides that it "is for a debt justly due as a consequence of withdrawals from business checking accounts [Richmond] maintained at [Capital One] ... causing overdrafts."  A Judgment by Confession in favor of Capital One in the amount of $7,685,659.93 was entered in Richmond County, New York on December 19, 2012.

Khan executed the guaranty in connection with the issuance of a letter of credit agreement for Richmond.  The guaranty executed by Khan is based upon the form guaranty that is required by the bank in order to issue a letter of credit to a corporation, such as Richmond.  During his deposition, Khan confirmed that he signed the guaranty because it was required for the letter of credit.  As a result of the guaranty, Capital One has made a demand upon Khan to pay the amount due and owing to Capital One from Richmond on the overdrawn accounts.

3

Capital One claims that by executing and delivering the guaranty, Khan expressly agreed that he "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of [Richmond] to [Capital One]... now existing or hereinafter arising or acquired on an open and continuing basis." "Indebtedness," as defined by the guaranty, expressly includes the type of "overdraft indebtedness" at issue here. Capital One also argues that, in accordance with the express terms of the guaranty, Capital One can enforce the guaranty against Khan "even when [Capital One] has not exhausted [its] remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness."

## **DISCUSSION**

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the

court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. This burden can be "discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

In Virginia,[3] the elements of a breach of contract claim are: (1) a legally enforceable obligation of defendant to plaintiff; (2) defendant's violation or breach of that obligation; and (3) injury or damage to plaintiff caused by the breach of obligation. *Ulloa v. QSP, Inc.*, 271 Va. 72, 79-80, 624 S.E.2d 43, 48 (Va. 2006). The Court is required to interpret a contract based on the language contained only within the four corners of that document. *Pocahontas Mining LLC v. CNX Gas Co., LLC*, 276 Va. 346, 353-54, 666 S.E.2d 527, 531 (Va. 2008); *see also Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983) ("when an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties.") (quoting *Globe Company v. Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)). A person who signs a contract is bound by its terms and cannot later allege that he did not read or understand the terms. *Peoples' Bank of Front Royal v. Robinson*, 26 Va. Cir. 172, 174 (Va. Cir. Ct. 1991) ("Failure to read a contract before signing it will not, as a rule, affect its binding force.").

When a guarantor's obligations are absolute and unconditional, the creditor possesses "virtually unfettered discretion . . . in its efforts to collect payment and dispose of collateral" and may proceed directly against the guarantor. *United States v. Houff*, 202 F. Supp. 471, 475-76 (E.D. Va.), *aff'd* 312 F.2d 6 (4th Cir. 1962); *see also Ives v. Williams*, 143 Va. 855, 860, 129 S.E.675, 676 (Va. 1925) ("It is well settled in the law of guaranty that when the guarantor enters upon an absolute guaranty, the creditor is under no obligation to first endeavor to collect from the

---

[3] Virginia law will be applied to the instant action as the guaranty executed by Khan by its own terms is governed by Virginia law.

debtor, nor is he under obligation to give notice to the guarantor of default on the part of the primary debtor."). Summary judgment is appropriate in favor of a creditor who proceeds directly against a guarantor based upon a guaranty that is both absolute and unconditional. *Houff*, 202, F. Supp. at 475-76.

Plaintiff claims that it is entitled to summary judgment as a matter of law because there is no genuine issue of material fact as to Khan's legal and contractual obligation to pay Capital One in an amount equal to the outstanding overdraft indebtedness of Khan's business, Richmond, pursuant to a guaranty that Defendant executed and delivered to Capital One.

Defendant argues in his opposition to the motion for summary judgment that summary judgment is premature because he should have been permitted to conduct late discovery, *i.e.*, a belated deposition of Richard Kelly ("Kelly"), a former employee of Capital One. Khan has known of the identity of Kelly since at least as early as February 21, 2013, when he testified during his own deposition that he had a meeting with Kelly when he delivered the executed documents for the letter of credit to him. However, Khan neglected to pursue this deposition in a timely manner, and in fact, never even raised the issue with the Court prior to the expiration of the deadlines set by the Court for discovery and motion practice. Yet, now, for the first time, Khan claims Kelly's deposition is necessary for him to adequately oppose the instant motion.

At the January 14, 2013, hearing, this Court set an expedited discovery and motion schedule; notably, depositions were to be conducted within 14 days of the date of the January 14 , 2013 hearing. After Defendant failed to appear voluntarily for his deposition in violation of the Court's Order, Capital One sought the Court's intervention on February 8, 2013. This Court issued an Order on Informal Application on February 14, 2013, which set forth deposition and

discovery deadlines, as well as setting a briefing schedule for the instant summary judgment motion. Specifically, all depositions were to be completed no later than March 1, 2013 and Plaintiff's motion for summary judgment was to be filed by March 8, 2013.

Having failed to seek an extension within the time set for the taking of depositions, and having not even raised the issue until the filing of his opposition to the instant motion for summary judgment, it is simply too late to bring this issue to the attention of the Court. Having failed to raise the issue in a timely manner, Defendant cannot now claim that it would be inequitable to grant Plaintiff's motion for summary judgment based on the undisputed facts before this Court.

In addition, Khan fails to identify any information whatsoever that is being sought from Kelly and fails to indicate how any deposition testimony would preclude a finding of summary judgment in Plaintiff's favor. Khan indicates that Kelly's deposition may demonstrate "imposition or deception on his part" but fails to suggest anything concrete. Any information Khan hopes to learn from deposing Kelly is at best speculative, *i.e.*, he points to nothing specific about his dealings with Kelly that might indicate that summary judgment should not be awarded in Plaintiff's favor. For example, Khan fails to offer any specific statement indicating that Kelly verbally communicated something to him that was contrary to the terms of the guaranty executed by him. Even if Khan could do so, the Court is required to interpret the guaranty based solely on the language contained within the four corners of the guaranty, as it is plain and unambiguous. *See Pocahontas*, 276 Va. at 353-54, 666 S.E.2d at 531. While Khan asserts that there exists a genuine issue of material fact as to his guaranty of the indebtedness of Richmond Wholesale but offers not a shred of evidence which raises any such issue of fact. Indeed, Khan admits to having

signed and delivered the guaranty because it was required by the bank for the letter of credit.

In support of its motion for summary judgment, Plaintiff has adduced evidence demonstrating the following: Richmond has incurred the substantial overdraft indebtedness for which Khan is liable pursuant to the guaranty executed by him. Richmond executed and delivered to Capital One the Confession of Judgment. Khan has admitted that the Confession of Judgment was executed by him, as president of Richmond, and before a notary. In the Confession of Judgment, Khan, again on behalf of Richmond, "confesses judgment and authorizes entry thereof again [Richmond] in the amount of $7,685,389.93, which represents the balance owed by [Richmond], as of December 12, 2012, to [Capital One]." The Confession of Judgment further provides that it "is for a debt justly due as a consequence of withdrawals from business checking accounts [Richmond] maintained at [Capital One]... causing overdrafts."[4]

Khan has not, and cannot assert any meaningful opposition to Plaintiff's summary judgment motion. Khan failed to identify or produce any individual who would be putting in any affidavit or certification on his behalf by this Court's February 19, 2013 deadline. Khan has been aware since as early as the January 14, 2013 hearing that he would be barred from offering any affidavit or certification of any individual who was not made available to be deposed. Therefore, Khan cannot rely on anything other than his own self-serving statements to oppose the instant motion. In addition, Khan elected not to depose Capital One's affiant, even though he had been timely identified and made available to be deposed. Given that Plaintiff's motion for summary judgment now stands essentially unopposed, and that Plaintiff has adduced evidence indicating

---

[4] While the Confession of Judgment is for the total amount of $7,685,659.93, because there are certain offsets, adjustments and clearance of items, the total overdrawn amount on all accounts remains at $7,446,153.65, plus any interest and attorneys' fees that might be awarded.

that Khan executed the guaranty and the indebtedness of Richmond as set forth in the Confession of Judgment, Capital One has established that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Accordingly, Plaintiff's motion for summary judgment in the amount of $7,446,153.65 is granted.[5]

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment is granted and Defendant's motion for a modification of the preliminary injunction and temporary restraints is deemed moot.  An appropriate Order will issue.

s/Faith S. Hochberg<br>
Hon. Faith S. Hochberg

---

[5]  Within 14 days of the date of this Opinion, Plaintiff shall file a formal motion for interest and attorneys' fees and is to provide the Court with a detailed description of the exact monetary amount of interest and attorneys' fees it seeks, as well as any documentation supporting its motion.